SAVOY, Judge.
This suit was instituted by plaintiff under the Workmen’s Compensation Act. After a trial on the merits, the district judge granted plaintiff compensation for a specified time during the period of disability, under the provisions of LSA-R.S. 23 :1221(1). From this judgment plaintiff appealed to this court.
The trial judge in a well considered opinion discussed the evidence in detail and properly disposed of the issues involved. We have therefore adopted his reasons as our own.
“Plaintiff, Sandis Mouton, a forty-eight (48) year old colored man, claiming to have been totally and permanently disabled by an accident which occurred December 19, 19S9, brought this suit against his employer, Levert-St. John, Inc., for workmen’s compensation benefits at the rate of Thirty-Five and no/100 ($35.00) Dollars, per week, for four hundred (400) weeks, plus medical expenses, attorney’s fees and penalties.
“Defendant resisted plaintiff’s claim on the ground that he had fully recovered from the injurious effects of his accident and was fully capable to return to his former occupation prior to the end of the period for which compensation was paid to him.
“The employment of plaintiff by defendant, the applicability of the Louisiana Workmen’s Compensation laws and the applicable compensation rate of Thirty-Five and no/100 ($35.00) Dollars, per week is conceded by the defendant.
“It was stipulated by counsel for both parties that defendant paid to plaintiff compensation for the period of twelve (12) weeks and two (2) days beginning December 19, 1959, at the rate of Thirty-Five and no/100 ($35.00) Dollars, per week, or the total sum of Four Hundred Thirty and no/100 ($430.00) Dollars. It was also stipulated that defendant has paid the following bills of plaintiff: St. Martin Infirmary (including the charge of Dr. A. R. Corne), $159.00; Radiology Clinic, Lafayette, Louisiana, $30.00; Dr. William Meuleman, Lafayette, Louisiana, $40.00; and Dr. James Gilly, Lafayette, Louisiana, $15.00, or a toal of Two Hundred Forty Four and no/100 ($244.00) Dollars.
“The uncontradicted evidence proves that plaintiff did receive accidental injuries on the date alleged.
“Plaintiff has waived his claim for penalties and attorney’s fees.
“Therefore, the only issue not resolved is the alleged disability of plaintiff beyond the period for which workmen’s compensation benefits were paid. On this issue the testimony of five (5) doctors was offered and that of a number of lay witnesses.
“The consensus of the opinions of four of the five doctors whose testimony was offered in evidence is that plaintiff, as the result of the accident suffered an injury to or strain of the ligamentous structures of his back, which accounted for the disabling symptoms of muscle spasm and pain on their initial examinations. X-rays of plaintiff’s back taken immediately after the accident, two months later and four months later, showed no evidence of injury or damage *141 to the bony structure of plaintiff’s back and no evidence of nerve injury or involvement. On the other hand, these x-rays revealed a number of congenital and degenerative defects including sacrilization of the 5th lumbar vertebra, marked narrowing of the lumbo-sacral joint, arthritis and spurring of the lumbar vertebra which, these experts attributed to osteo-arthritis. These conditions were not brought about by the accident as they antedated the accident. Also, it was generally agreed by the experts that, as there was no evidence of injury or damage to the bony structure of plaintiff’s back, the condition brought about by the accident which caused pain and resulting disability was not of a permanent nature.
“After the accident plaintiff was taken to the St. Martin Infirmary in St. Martin-ville, Louisiana, which is located a few miles from the place where the accident occurred. He was examined by Dr. A. R. Corne, a general practitioner, and x-rays of his back were taken at the said infirmary. X-ray studies showed considerable osteoarthritis, but no evidence of traumatic injury. Dr. Corne diagnosed plaintiff’s injury as a severe back sprain having found muscle spasm of the lumbar muscle group and pronounced subjective complaints. A course of rest and physio-therapy treatments was prescribed by Dr. Corne. After approximately eight (8) weeks of such rest and treatment, plaintiff’s complaints became more pronounced in spite of clear evidence of improvement. Dr. Corne felt, therefore, that plaintiff was at least exaggerating the severity of his pains but, nevertheless, referred him to Dr. W. L. Meuleman; an orthopedic surgeon. Dr. Meuleman examined plaintiff on two occasions. The first time on the 26th of February, 1960, at the request of Dr. Corne; the second time on March 11, 1960, at his own request. X-rays taken by Radiology Clinic at the request of Dr. Meuleman were examined by him. They showed no evidence of recent fracture or dislocation, but they did reveal the developmental defects here-inbefore stated. Dr. Meuleman could not reach any definite conclusion as to whether plaintiff had a genuine disability because he felt that, there was voluntary resistance on his part to prevent carrying the tests, described by him, to any degree of completion. He however also felt that plaintiff was exaggerating his complaints of pain.
“Even though Dr. Meuleman could not reach any definite conclusion concerning plaintiff’s alleged disability, nevertheless, Dr. A. R. Corne discharged plaintiff as capable of returning to work on March 15, 1960, four days after the second examination of him made by Dr. Meuleman. It would appear, therefore, that Dr. Corne, from his own experience with plaintiff and the report to him by Dr. Meuleman, concluded that plaintiff was no longer suffering from any disability arising from the accidental injuries he received on December 19, 1959.
“Shortly after being discharged, that is, on March 24, 1960, plaintiff was examined by Dr. James Gilly, also an orthopedic surgeon, at the instance of his attorney. Dr. Gilly examined the x-rays of plaintiff’s back which had been taken at Radiology Clinic and his findings and observations were substantially the same as those of Dr. Meuleman. He, also, was of the opinion that the abnormalities in plaintiff’s back existed prior to the accident. With these abnormalities present he was of the opinion that the period of recovery would exceed the normal. He estimated this period to be from four to eight months after the accident. On this initial physical examination of plaintiff, Dr. Gilly noted contradictory elements of subjective pain elicited from him, but he did not find any genuine evidence of disability. He did not find any muscle spasm, any muscular weakness, or evidence of nerve root compression. Hr testified in part as follows:
“Q. Would you give us your conclusions at the end of that first examination? A. I felt that he probably sustained a twisting type injury to the lumbar area. The physical examina *142 tion, however disclosed elements that were contradictory. With the patient standing and conscious of the fact he was being examined, there was restriction of movement; and when he was unconscious of the fact he was being examined, there was no restriction of movement. There was the degenerative changes in the functional lumbo-sacral joints space, which is between the fourth and fifth lumbar vertebrae, antidating the accident. I could find no evidence of nerve root compression.
“Q. Was there anything from your examination to indicate to you, Doctor, that this man might have suffered as a result of the accident or could conceivably have suffered as a result of that accident an intervertebral disc? A. No, sir.
“Q. As a result of that first examination were you able to find any evidence of disability? A. No.”
“Deposition of Dr. James Gilly, Pages S and 6.
“On April 22, 1960, plaintiff was examined by Dr. George B. Briel, another orthopedic surgeon. He has x-rays taken of plaintiff’s back which showed essentially the same findings as in the report from the Lafayette Radiological Clinic. He agreed that the abnormalities of plaintiff’s back, reflected by these x-ray pictures, existed prior to the accident. He stated that he did not know exactly what plaintiff suffered by the accident, he thought it possible that he experienced a straining of the ligamen-tous structures in the lower portion of his back or even some disalig/iment of the vertebrae in the lumbo-sacral region, which, of course, was superimposed upon the abnormal changes in plaintiff’s back which are disclosed by the x-rays taken of plaintiff’s back. He also stated that it was his feeling, at the time he examined plaintiff, that although some of his reactions were possibly exaggerated, nevertheless, he still had very definite pain in the lumbo-sacral region of his back. Dr. Briel did not believe that plaintiff had sustained more than a strain of the ligamentous structures of his back which caused an inflammatory condition. Pie also stated that with the passage of time and rest the disability arising from such injuries usually subsides and the back returns to the same or practically the same status as before the accident giving rise thereto. He would not, however, fix any definite time for plaintiff’s recovery as the period of recovery in such cases varies from three months to over one year.
“On May 3, 1960, plaintiff was examined by Dr. Robert Kapsinow, who was of the opinion that plaintiff is possibly suffering from an extruded or partially extruded disc between the fifth lumbar vertebrae and the first sacral vertebra. According to Dr. Kapsinow this condition results in pressure against the spinal nerve roots and thereby produces pain which is disabling. This opinion is not in accord with those of the other doctors who examined plaintiff. Dr. Briel did say that possibly, orginally there was a disalignment of the vertebrae in the lumbo-sacral region, but he made it clear that such condition, if any, had been temporary and had disappeared when the x-rays were taken by Radiology Clinic in Lafayette. Dr. Kapsinow did not examine the x-rays that were taken of plaintiff’s back. Moreover, his practice is in the field of general surgery and he has not at any time specialized in orthopedics.
“This case was tried on September 16, 1960. Sometime in August, 1960, plaintiff was re-examined by Dr. James Gilly. On the second examination plaintiff complained of constant pain in the back, of pain in the back of both hips and in the back of both knees accompanied by sensation of weakness of the knees. He complained of pain at rest and also on activity and that the most painful position was lying flat on his back. Following are excerpts from his testimony in regard to his re-examination of plaintiff:
*143 “Q. Will you give us your conclusions as a result of that last examination ? A. The patient remained very difficult to evaluate and would not cooperate in moving his back or permit the performance of the leg tests. The absence of muscle spasm and the extremely limited amount of movement would lead me to believe he was trying to fool me on the performance of the examination, and in my opinion the limited examination permitted and the findings on the previous one, there was probably no residual disability as a result of this injury.
“Q. Assuming this patient had had a back sprain or a twist as you described at the time of the accident which he related to you, would that be a permanent disabling thing normally? A. No, I don’t believe.
“Q. What is the normal course, what is the normal period for recovery from such a sprain if this man had one? A. Two to four months, and with degenerative changes, if it would fall within the two-month period, it would probably take about four months to get over; and if it would fall within the four-month period, it would probably take eight months.
“Q. Assuming he had had this back sprain and it was a genuine thing, do you believe that sufficient time had elapsed by the time of your last examination for this patient to have completely recovered from the effects of that sprain ? A. I think by the time of the first examination, really.
“Q. At the time of your last examination, I take it that it is your opinion that he had no residual disability as a result of that sprain, is that correct? A. That’s true.
“Q. And actually you were of that same opinion when you examined him the first time. A. That’s right.”
“Deposition of Dr. James Gilly, pages 8 and 9.
“Q. Now you stated that you were unable to find the presence of muscle spasm other than when the patient’s attention was focused upon the fact that he was being examined. A. I said muscle rigidity when his back was being examined, not spasm.
“Q. He did have muscle rigidity? A. Yes.
“Q. But you did not interpret that as spasm, is that correct? A. No, it was voluntary.
“Q. Now the absence of muscle spasm does not necessarily mean that this man was not suffering from some degree of pain, does it? A. I think it does. I am not talking about immediately following the accident, but on the two occasions that I examined him.
“Q. You state categorically that the presence of pain necessarily must manifest spasms? A. From an orthopedic condition in the back, yes, sir.”
“Deposition of Dr. James Gilly, Page 11.
“Plaintiff offered in evidence the testimony of a number of lay witnesses, who now live and who have been living in the area where he himself has been living for many years. In substance these witnesses testified that prior to December 19, 1959, plaintiff had been able to perform manual labor without any apparent disability. Since that time they have not seen him do any work and he appears to be physically unable to do manual labor. Two of these witnesses, men of good reputation, testified that they had employed plaintiff for a period of years prior to his accident; that he had been a good worker and had a good reputation for honesty.
“The preponderance of the evidence indicates the following material facts.
“(1) When plaintiff suffered accidental injuries on December 19, 1959, *144 he was suffering from osteo-arthritis and had defects in his back which may be described as sacrilization of the fifth lumbar vertebra, that is the fifth lumbar vertebra was grown to the sacrum, which is the middle bone of the pelvis; narrowing of the fifth lumbar disc space associated with a vacum phenomenon and boney reaction of the lower half of the fourth lumbar vertebra and the upper half of the fifth lumbar vertebra, with spurring in this area. There were also spurs present in the body of the first lumbar vertebra and the twelfth dorsal vertebra.
“(2) None of the above described abnormalities in plaintiff’s back were caused by the accident.
“(3) As the result of the accident, plaintiff did not suffer any injury or damage to the bony structure of his back or nerves.
“(4) The only injury suffered by plaintiff as a result of the accident consisted of a strain of the ligamentous structures of his back which caused an inflammatory condition and accounted for the disabling symptoms of muscle spasm and pain.
“(5) The disabling effect of the injury to plaintiff’s back was not of a permanent nature and should disappear within a period of time ranging from three months to eight months after the. accident.”
“As in other cases, the plaintiff in a compensation suit bears the burden of proof. He is required to establish his claim to a legal certainty by a reasonable preponderance of the evidence. Speculation, conjecture, mere possibility, and even unsupported probability are not sufficient to support a judgment. Higgs v. Monroe, La.App., 77 So.2d SSS. Applying this principle of law to the instant case, I am of the opinion that plaintiff has failed to prove by a preponderance of the evidence the existence of any disability arising from his accidental injuries beyond the date of the last examination of him by Dr. James Gilly in August, 1960. The probabilities are that when he was last examined by Dr. Gilly he was not suffering any disability arising from the effects of his accident. Otherwise he would not have resisted so strongly the performance of the tests necessary to establish the genuineness of his complaints of pain.
“Therefore, I will render judgment in favor of plaintiff and against defendant for the sum of One Thousand Two Hundred Sixty and no/100 ($1,260.00) Dollars, being the amount of compensation due for the period of thirty-six (36) weeks from December 19, 1959, through August 27, 1960, less the amount of compensation paid, Four Hundred Thirty and no/100 ($430.00) Dollars, or for the sum of Eight Hundred Thirty and no/100 ($830.00) Dollars, and for all costs of this suit including the fees of the experts which have already been fixed by the Court at Fifty and no/100 ($50.-00) Dollars, for each expert.”
For the reasons herein assigned, the judgment of the district court is affirmed. Costs of this appeal are to be paid by plaintiff.
Affirmed.